'The opinion of the court was delivered by
Marr, J.
Eugene Hacker died in April, 1871, intestate, leaving a •widow, Mrs. Agathe Leromain Hacker, and eight children, one of them wife of Numa P. Hacker, and seven minors. The widow was confirmed ■as natural tutrix of the minors, and Numa P. Hacker, their brother-in-law, was appointed under tutor. In April, 1872, about a year after the death of her husband, Widow Hacker, on her petition and prayer to that •effect, was judicially recognized as widow in community, entitled in full ownership to one half and as usufructuary to the other half of the property inventoried in the succession, and was put into possession of the whole. The succession of Hacker .was thus closed.
In June, 1872, Widow Hacker presented a petition in which she stated that the property of the succession consisted of real estate, with the buildings and improvements, some shares of stock in the People’s Bank, and a hardware store, the business of which she had continued. “ That in order to provide for the means to carry on her business properly for her wants and those of the minors, and for the purpose of paying the debts of the succession, it is necessary that she should *975 mortgage the real estate to the amount of six thousand dollars, aDd sell said shares, but she can not do this without the advice of a family meeting.”
The family meeting was convened, and without assigning any reason for it, declared unanimously that it was “ to the interest of said minors that the shares in the People’s Bank be sold and that the immovable property * * * be mortgaged for the amount of ten 'thousand dollars.”
It does not appear whether the members of this meeting were relations or merely friends of the minors, except that Hamilton N. Gautier, one of them, had married one of the minors, and Numa P. Hacker, the husband of another one of the daughters, in his capacity as under tutor -approved the deliberations. The proceedings were homologated and the . widow was authorized to sell the shares of stock and to mortgage the real estate; but, like the deliberations of the family meeting, this ■order is silent as to the terms or conditions of thp sale and of the mortgage.
The widow, in her own right and 'as natural tutrix of her six minor children, Mrs. Eugenie Hacker, assisted by her husband, Numa P. Hacker, and Mrs. Leocadie Hacker, assisted by her husband, Hamilton N. Gautier, executed a promissory note at one year for 15000, and granted a mortgage in favor of Aimó Gautier to secure the payment, binding themselves jointly and in solido.
Referring to 28 A. 446, it will be seen that in January, 1873, Joseph Duvigneaud was appointed administrator of the succession of Hacker: that in July he filed a statement of debts, and obtained an order to sell the real property at one third cash; balance in one and two years: that Gautier intervened and obtained a modification of the order so as to require the sale to be for cash; and that, on appeal, this court held and decided in April, 1876, that the succession of Hacker was closed by the putting of the widow into possession as owner of one half and usufructuary of the- other half: that the succession was no longer under the jurisdiction of the Second District Oourt; and that the entire proceeding was void.
■ In May, 1876, soon after this decision, Aime Gautier, the mortgagee, ■obtained executory process on the note and mortgage. The execution of the writ was delayed by the opposition of Widow Hacker, then by her ■death, by the death of her daughter, Mrs. Numa P. Hacker, by the alleged refusal of Numa P. Hacker to qualify as natural tutor of his two ■children, minors, and by the marriage of one of the daughters, Malvina Hacker, to Jules Mayronne.
Mayronne qualified as tutor of the minors; and in his capacity and -to authorize and assist his wife, he obtained an injunction, alleging sub *976 stantially that the mother had no authority to borrow money and to bind them by note and mortgage, and that they received and she received no consideration for the same. They also prayed for damages for the wrongful seizure of the property.
Gautier answered by general denial, and prayed for the dissolution of the inj unction with damages. The judgment appealed from dissolved the injunction with $500 damages, and two per cent additional interest, which latter was remitted.
The whole proceeding in this case is extraordinary. The appraised value of the succession of Hacker was $65,526. When the mortgage was granted by the widow, íd July, 1872, the certificate of mortgages showed that there were no incumbrances on the property, except for the drainage tax; the vendor’s mortgage to secure $2800 represented by two notes, which were exhibited to the notary and parties present, paid, can-celled and defaced ; the recording of two bonds in 1868, the other in 1869, given by Hacker as treasurer of a fire company, and the general mortgage against Mrs. Hacker as tutrix.
The statement in Mrs. Hacker’s petition, that she had continued the hardware business and that at the end of the first year it was necessary to sell the bank stock and to mortgage the real estate of the succession to provide means to carry on her business, ought to have alarmed the family meeting. Instead of refusing to consent to the extraordinary demand of the widow, this meeting was unanimously of opinion that she ought to be allowed, not only to sell the bank stock, but to mortgage all the real property for four thousand dollars more than she had had the courage to ask for in her petition. It is strange that the judge did not unqualifiedly refuse to approve and homologate these proceedings, which seem to have been conducted in utter disregard of the rights and interests of the minors.
When it becomes necessary to call a family meeting, it must be composed of relations of the minor, if there be a sufficient number in the parish, or in an adjoining parish, within thirty miles. In her petition Mrs. Hacker gave the names of seven persons, without reference to their relations to the minors, nor are they in the judge’s order appointing them, nor in any part of the proceedings, as far as wo have discovered, styled “ friends.” It appeared on the trial of this case that one of them was a clerk in the hardware store in which Mrs. Hacker and Gautier were partners. The mortgage shows that Gautier, one of the members, was the brother-in-law of the minors, but, as we shall presently see, he was incompetent by reason of his interest conflicting with that of the minors: R. O. C. 283; and Numa P. Hacker, the under tutor who assisted and who approved the deliberations of the meeting, occupied a position equally disqualifying.
*977 Put into possession as absolute owner of one half and as usufructuary of the other half of property inventoried at more than sixty-five thousand dollars, Mrs. Hacker found it necessary, within about a year after the death of her husband, to ask for a loan of six thousand dollars, on mortgage, and for an order to sell the most available of the personal property, the bank stock, to enable her to carry on properly her hardware business which she had continued without interruption from the death of her husband. Of course, it did not long survive under such management, and was bankrupt within a few months after this temporary relief.
The law declares that the immovables of the minor can not be alienated nor mortgaged, unless, on the representation of the tutor that it is for the interest of the minor, a family meeting shall declare that the sale or mortgage is of absolute necessity, or of evident advantage to the minor. B. C. C. 339. How could any one imagine that it was either absolutely necessary or of evident advantage to these minors that their property should be incumbered to provide their tutrix with means to carry on her mercantile business, which was hastening, under her management, to its ruin ?
In case the family meeting shall consider the sale or mortgage to be advantageous to the minor, “ it shall set forth the reasons of its determination in order that the judge may decide whether he ought to cause it to be homologated, and shall fix the terms of credit on which the property shall be sold, and the other conditions of the sale, if the-case requires it.” B. O. C. 310.
There is not one word in the deliberations of this meeting approximating a reason for its determination, nor as to when or how the stock shall be sold, whether for cash or on credit, whether by public or private sale, -whether with or without notice by publication or otherwise; nor is there any thing said about the stipulations in the mortgage, nor the rate of interest to be paid, nor on what credit the mortgage debt is to be contracted.
Several witnesses were examined on the trial, among them Hamilton N. Gautier, and the book-keeper and other employees of the hardware concern. These witnesses say that the debts of the succession were $20,000; but not one of them could give the name of a single creditor. The style of the business was Hacker & Co., and Numa P. Hacker was a partner with Mrs. Hacker at one time; but it does not appear when he became or when he ceased to be a partner. Hamilton N. Gautier was a partner at the time the mortgage was granted; but whether he and Numa P. Hacker were partners at the same time it does not appear.
Aime Gautier, in whose favor -the mortgage was made, was the *978 father of Hamilton N. Gautier. It is not pretended that he lent Mrs. Hacker §5000. The testimony, very unsatisfactory in this respect, tends to show that he discounted the §5000 note at eight per cent, and that, at different times, he handed to his son the proceeds, §4600, part of it before the execution of the mortgage. Hamilton N. Gautier says the debts of the store, contracted after the death of Hacker, amounted to some thirty to forty thousand dollars. "Whatever money Aimé Gautier advanced, the whole of it was deposited in bank to the credit of the account of Hacker & Co., and it was checked out like any other money belonging to that account. Nothing shows that Mrs. Hacker ever touched or had personally the benefit of a single dollar of this pretended loan, except, as Gautier says, it was carried to her credit on the books of the concern, and though the witnesses were pressed, one and all, they could not give the name of a single creditor of the succession of Eugene Hacker, nor the amount of a single debt of that succession, to which any part of the money was applied. It fully appears that Hamilton N. Gautier was actively managing the business at the time of this pretended loan, as one of the partners; and it is most extraordinary that he could not give •the name of any creditor nor the amount of any debt of the succession paid out of this loan.
In July, 1873, when Duvigneaud, in his capacity as administrator, •presented a statement which he said contained all the debts which he had been able to ascertain at the end of six months after his appointment, the whole consisted of a judgment in favor of the attorney who represented Mrs. Hacker in the early stages of the proceeding up to her confirmation as natural tutrix, say for $876 50, about $120 due to three insurance companies, the taxes for 1871 and 1872, and the costs and expenses of the administration. If the succession was sc largely indebted, how can the silence of the creditors for more than two years after the death of Hacker be accounted for ? This record does not disclose even the name of a creditor, except as stated by Duvigneaud ; and we have seen that Hacker left his property virtually unincumbered.
The whole case'indicates the utter want of consideration for the note and mortgage, so far as the heirs of Eugene Hacker are concerned. As to the minors, the note and mortgage are absolutely void. As to the two major heirs who joined their mother in these contracts, the testimony makes it more than probable that they were deceived and were in error; that the pretended loan was exclusively for the benefit of the partnership of which their husbands were members, debts of the respective communities for which they could not lawfully make themselves liable; but we will not conclude the mortgagee with respect to these major heirs, because he may have rights against them which can be established under proper issues by additional proof.
*979 Mrs. Numa P. Hacker left two children, minors. Their father, natural tutor, did not appear to represent them, and a tutor ad hoc was named by the court to represent them in the executory proceeding.
It seems more than probable, from the mismanagement of the hardware business, that the minors, for whom their mother was tutrix, will have mortgage rights against her succession which will exceed in amount the entire value of her interest in the remnant of the succession, the real estate, and that they would be preferred to the mortgagee, Gautier. Enough appears to warrant the perpetuation of the injunction, and to compel Gautier to proceed via ordinaria to establish his rights, whatever they may be, against the succession of Mrs. Agathe Leromain Hacker, against the succession of Eugenie Hacker, late wife of Numa P. Hacker, and against Mrs. Léocadie Hacker, wife of Hamilton N. Gautier, on the note and mortgage in question.
It is, therefore, ordered, adjudged, and decreed that the judgment •appealed from be annulled, avoided, and reversed ; that the note at twelve months for 15000, dated 29th July, 1872, and the mortgage executed by Mrs. Agathe Leromain Hacker, in her own right, and as natural tutrix of her minor children, and by Mrs. Eugenie Hacker, wife of Numa P. Hacker, authorized and assisted by her husband, and by Mrs. Léo•cadie Hacker, wife of Hamilton N. Gautier, authorized and assisted by her husband, in favor of Aimé Gautier, to secure the payment of said note, passed before Armand Pitot, Jr., notary public, on the thirtieth of July, 1872, be and the same are hereby declared and decreed to be null, void, and of no effect so far .as are concerned the minor heirs of Eugenie Hacker and Agathe Leromain Hacker, for which minors the said Agathe Leromain Hacker acted as natural tutrix in the granting of said mortgage, as to whom and their propelty 'the claim and demand of Aime Gautier are rejected ; that the rights of said Aime Gautier, what•ever they may be, against the successions of Mrs. Agathe Leromain Hacker and the deceased daughter, Mrs. Eugenie Hacker, and against Mrs. Léocadie Hacker, wife of Hamilton N. Gautier, be and the same ¡are hereby reserved; that the injunction herein granted against the executory proceeding by Aime Gautier be and it is hereby reinstated and made perpetual; and that Aime Gautier, appellee, pay all the costs of this proceeding in the district court, and in this court. The claim of the plaintiffs in injunction for damages for the alleged wrongful seizure ■of the mortgaged property is dismissed as in case of nonsuit.